*John C. Healy* and *Powell & Smiley,* for plaintiff.

*Jacob Shroder* and *Edward C. Reemelin,* contra.

## IMPROVEMENT OF STREET UNDER AN INVALID LAW.

[Circuit Court of Lucas County.]

ABBIE WHIPPLE ET AL V. THE CITY OF TOLEDO ET AL.

Decided, September, 1905.

*Street—Improvement of, by Straightening—Jurisdiction of Council over Petition—Not Lost by Delay in Acting upon, When—Change in Law Regulating Assessments Pending Action—Irregularities in Procedure—Validity of Assessment Against Grantees.*

1. A municipal council does not lose jurisdiction over a petition for a street improvement by reason of a delay of two years in taking action thereon, nor are the petitioners relieved from their obligation to pay the assessment by reason of such delay.

2. A change in the law regulating the levying of assessments for street improvements, made while the petition for the improvement is pending before council, does not have the effect of invalidating the assessment, where it does not appear that the petitioners abandoned the effort to secure the improvement, and the validity of the assessment is based upon their agreement to pay it, and not upon any statute.

3. Moreover, as the law stands now, and as it stood at the time this improvement was ordered, a petition was not necessary to render valid an assessment to pay the cost of acquiring property for the purpose of straightening a street.

4. Failure of council to determine in advance the manner in which an assessment shall be levied, or to give notice to property owners of an intention to levy an assessment, does not render the assessment invalid, where the petition for the improvement did not specify the manner in which it was desired the assessment should be levied or particularize in other ways as to the plan to be adopted in proceeding with the improvement.

5. The lien of an assessment attaches from the date of the passage of the assessing ordinance. Purchasers of property prior thereto and without notice are not liable for the assessment.

6. The whole cost of the improvement in question was assessed against the petitioners, who were less than a majority of the abutting owners both in numbers and feet front. The court holds that this was inequitable, and not in accordance with a fair construction of the petition; and orders that the assessment be set aside and that a new assessment be levied, which will place upon the property of the petitioners only their fair proportion of the cost of the improvement.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

This case is here on appeal. It is an action to enjoin certain assessments levied by the city. The assessments are for the costs of the acquiring of certain real estate to straighten Twelfth street at a point where it runs into Union street, so as to make it continuous to Union street without a jog, which requires the taking of lots 92, 93 and part of lot 94, lying upon the west side of Union street and the north side of Jackson street. It appears that the city acquired this property by condemnation proceedings for the purpose of straightening the street, as is stated; and that the cost, the entire cost, including the costs which were assessed upon certain property upon Union street and upon Twelfth street, amounted to about $2,650.

The persons whose property was assessed to pay these costs joined in this case to enjoin the assessment. Their properties lie along Twelfth street, between Adams and Jackson, and on Jackson street and Union street, between Jackson street and Woodruff avenue. They contend that this assessment is invalid on various grounds that I will take up and discuss in their order. But first it may be said that it is conceded on all hands that in a strictly adversary proceeding, the assessment may not be made upon private property for the costs of an improvement of this character. It has been so held in the case of *The Cincinnati, Lebanon & Northern Railroad Co.* v. *The City of Cincinnati,* 62 O. St., 462, and more distinctly in the case of *The City of Dayton* v. *Bauman,* 66 Ohio St., 379. It was held in those cases that the law providing for the assessment of the costs of improvements of this character upon beneficial property is unconstitutional.

But this is not the only ground upon which plaintiffs under-take to have the assessment enjoined; for it is insisted upon the part of the city that the circumstances of this case are such as that these property owners are required to pay the costs of this improvement under the doctrine of agreement and estoppel laid down and enforced by this court, as we believe in accordance with the decisions of the Supreme Court in the case of *Hendrickson* v. *Toledo*, 3 C. C.—N. S., 355. The plaintiffs insist, however, that this case does not apply to the case at bar; that there is nothing in the circumstances of this case that would justify the levying and collecting of this assessment upon the theory that there had been an agreement to pay, or that there was any estoppel.

The history of this case, briefly, is as follows: In 1900, in the latter part of the year, and the early part of 1901, a petition was circulated among the property owners along this part of Twelfth street and Union street, which was signed by some of them, including the plaintiffs here, or part of the plaintiffs here, asking the council to straighten Twelfth street by acquiring this property so as to take out the jog where Twelfth street and Union street come together. It appears from the oral testimony that we have heard that this place was very unsightly and the people of the neighborhood were anxious to have this improvement made for that reason; that the lots were low and had been filled in with all sorts of debris and just at this point jutting out into the street where it was plainly visible from all these properties (which was residence property), there was an old shanty that was sort of an eyesore of the neighborhood. So it appears that this petition was prepared and circulated and signed. The persons who were active in forwarding this enterprise and had this improvement made were Mr. Macomber, Mr. Drago and Mr. Thomas, each of whom owned property in the neighborhood. That petition reads as follows:

"*To the Honorable Council of the City of Toledo, Ohio*—

"*Gentlemen*: We, the undersigned, owners of property fronting upon or abutting upon Twelfth street, between Adams street and Jackson avenue, and on Union street between Jackson avenue and Woodruff avenue, respectfully petition your hon-

orable body to take the necessary steps to condemn and appropriate for public use and highway, lots 92, 93 and so much of lot 94 as is necessary in Central Addition to said city for the purpose of extending Twelfth street a uniform width to Union street and widening said Union street. We believe and acknowledge our respective properties would be benefited by the opening and widening of said street, as stated above. We consent that a special assessment be made upon said street as stated above. We consent that our respective properties be so assessed for the purpose named herein as provided by law.''

When this petition was first prepared, instead of being addressed as I have read to the honorable council, was addressed to the honorable common council. It seems that during the pendency of these proceedings in the council, the new code was adopted, and that the designation of the council became simply the council, instead of, as it had been formerly, the common council. And some one has made it conform to the new name by striking out the word ''common''; otherwise the petition itself is unchanged.

Mr. Lowenshal was the agent of the parties circulating this petition, and it appears that he was actively engaged in forwarding this work until sometime in June, 1901. He had filed the petition with the proper officers of the city somewhat earlier, but he still manifested interest in the matter, and on the 22d day of June he attached a certain affidavit to the petition and he says that upon that day he urged the city solicitor to push the matter forward. I am particular about mentioning these dates because it is urged upon the part of these property owners as one of the grounds of relief that the council of Toledo was so long in acting upon this petition that they lost jurisdiction of the matter. That, as we understand it, is the substance of the claim on the subject of delay, and that in the meantime before action was taken by the counsel there had been a change in the law on the subject.

Now it appears from the testimony of Mr. Northup, who was assistant city solicitor at that time, that he endorsed upon the wrapper then upon the petition, in accordance with the customs of that officer, that the petition was not approved, and I believe he stated in his testimony that he did that upon the

ground there was not a sufficient number of signatures to it. It seems that the matter was taken up afterwards and other names were signed to the petition and a new back was put upon it; that the people upon the streets were not content to give up, but still desired to have the straightening of the street accomplished; so it seems to have been circulated again, some .six or seven other signatures were obtained and the petition was then refiled on May 15, 1903. In pursuance of this petition a resolution to condemn was adopted on the 29th day of June, 1903, and an ordinance to appropriate was passed on the 28th day of July, 1903. In pursuance of this the property was acquired, and on the 11th day of April, 1904, a resolution to assess was adopted, the report of the assessors was received on May 4, 1904, and the assessing ordinance was passed on July 18, 1904; and soon thereafter in pursuance of law the assessments were certified to the county auditor and entered upon the tax duplicate against these properties.

Now we are of the opinion that this delay alone was not sufficient to invalidate the petition, notwithstanding the fact some changes in the law were made in the meantime. The parties never withdrew their petition or took any steps at all towards dropping or abandoning it; and the change that was made in the law appeared to be a very immaterial matter; for, if these assessments are to be sustained at all, they are not to be sustained upon the theory that the law authorizes them, but upon the theory that the parties had agreed to be assessed; had agreed, in other words, to pay the costs of acquiring this property for the straightening of this street; and that therefore they were bound to pay, because the city had gone forward and acquired the property and incurred the expense in pursuance of their request and their promise.

The effect of such action, according to the views of this court, is very fully discussed in the Hendrickson case, and it is not worth while to go over that branch of the subject again. I simply add the remark, however, which I think appeared in that report as well, that the law is only effective to this extent (the law being invalid or unconstitutional and not enforceable at law), that it is looked to and regarded as a scheme or plan for the making of the assessments which is adopted by the parties as

a part of their agreement, when they request that an assessment shall be made and agree that they will pay it.

At the time this petition was filed there was a law upon the statute books which provided for assessing the costs in this sort of an improvement, and it gave in detail the plan for making the assessments. After this decision by the Supreme Court holding that that law as to this class of cases was unconstitutional, when the Legislature came to the adoption of the new code they did not undertake to provide for the assessment of costs of this character upon the property of a private owner, and that is the change in the law referred to. But the law, after it was repealed, it seems to us was about as effective in the way of stating a plan of operation as it was before, it being only necessary for that purpose to find that the parties referred to that law for that plan and adopted it as their plan and made it part of their agreement; and we think that this was so in this instance; and we think that if there were nothing else in the way of the enforcement of these assessments, they might be and should be enforced upon the theory and principle laid down in the Hendrickson case.

It was said in the Hendrickson case that the only objection urged on the part of the property owners to the assessments there was that the law was unconstitutional; but here, as I have indicated, there are other objections made to them, and one of them which the plaintiffs seem to regard as very material is that the owners of property between the points where the assessments are levied, between Adams street and Woodruff avenue, that there was not a majority of the owners signed the petition, not a majority of the owners of the feet front, and they call attention to Section 2267 of the Revised Statutes of Ohio, which they contend requires such majority; and it is said in argument that we seem to have regarded that as important in the Hendrickson case. We referred to it there—and there had been a majority signed the petition in that case, but upon an examination of the statute we find that the law has been changed in that respect since the transaction involved in the Hendrickson case; that at that time such a majority of signers was required, and therefore we hold that it must have been contemplated by the petitioners when they signed this petition—even

regarding it as a proposal or basis of an agreement; it must have been contemplated that a majority would sign, and that the agreement or the proposal would not be binding until a majority had signed. And so counsel urge here that the council of the city was not authorized to act upon this as a proposal and make of it an agreement until it had been signed by a majority; but as I say the statute in that respect has been materially changed. Section 2267, as it then read will be found in Volume 92 of the Ohio Laws, pages 340-341. As it read at the time of the transactions at bar it will be found in Volume 94, Ohio Laws, at page 161; and with respect to making assessments upon petitioners in cities of this grade and class contains in parentheses this exception:

"Except sidewalks, sewers and the appropriation or otherwise acquiring lots or lands for the purpose of laying off, opening, extending, straightening or widening streets, alleys, or other public highways, for the power to make which improvement no petition shall be necessary."

That is, for improvements of that character, no petition was required. The statute that I have been referring to is Section 2267. Turning now to Section 2271, which is also invoked, we do not find that it requires a petition at all in a case of this character. Our construction of that section is that a petition is only required, or was only required as the law stood at the time of these transactions, in order to authorize an assessment upon property for an improvement of this character, where it was sought to assess back upon property from which the street or part of the street was taken, or where it was sought to assess upon property upon intersecting streets, generally a petition was not required at all, and a petition would not be required of persons standing in the relation to the improvement that the plaintiffs here stand to this improvement.

It was also urged that Section 2264 of the Revised Statutes of Ohio provided certain prerequisites to the making of an assessment, which must be observed; otherwise the assessment would not be valid. That section as it then read was as follows:

"In cases provided in Section 2263 and in cases where an improvement of any kind is made within cities of the second grade of the first class, and in corporations in counties con-

taining a city of the second grade of the first class, of an existing street, alley, avenue, navigable water-course or other public highway, and whenever any street, alley, avenue, navigable water-course or other public highway is opened, extended, straightened, widened or improved, the council of such cities or corporations may decline to assess the costs and expenses mentioned in Section 2263 or any part thereof, or the cost or expense of any part thereof of such improvement, except as hereinafter mentioned, on the general tax list, in which event such costs and expenses, or any part thereof, which may not be so assessed on the general tax list, shall be assessed by the council of such cities on the abutting and such adjacent and contiguous or other benefited lots and lands in the corporation, either in proportion to the benefit which may result from the improvement, or according to the value of the property assessed, or by the foot front of the property bounding or abutting upon the improvement, as the council by ordinance, designating the territory to be assessed, may determine before the improvement is made, and in the manner and subject to the restrictions herein contained.''

Then there is a further provision as to how the assessment shall be paid. It does not appear that the determination of the property to be assessed, or how the property should be assessed, was made by the council before they acquired this property.

We are cited to some decisions to the effect that this is a necessary prerequisite to the validity of the assessment. But as I have remarked before, this was not a strictly adversary proceeding; it was not adversary at all. If it is to be sustained at all, it is to be sustained upon the theory of agreement; and we do not understand that in a case of this character where an assessment is to be sustained upon the theory of agreement or estoppel, or both, that the council is required to observe all these provisions as to the mode of proceeding. They must be substantially what is requested, what is agreed upon. They must acquire the property, levy and assess the cost thereof upon petitioners according to the plans provided for by the statute. The petitioners for the improvement are, so to speak, in court. They have gone before the council. They are subject to its jurisdiction; it is not necessary to serve them with notice of what is going on at every step. They have come in and asked this to be done; they must take notice of what is being done, so

long as there is no attempt at concealment or fraud or undue advantage. They have petitioned for this improvement and they ask that it be assessed upon certain property; therefore, it is not important to them if the council before it proceeds should determine upon what property the assessment is to be laid, for if the agreement to assess has been agreed upon, it is not important to them if the council should determine before it acquires the property upon what plan the assessment shall be made; for they have agreed as we construe this proposal that it shall be assessed according to any lawful plan provided in the statute in such cases; and there seemed to have been several plans provided in the statute in such cases; and the plan adopted here was to assess according to the benefits, according to the report of the assessor, and certainly that would not be an inequitable or unfair plan. That was one of the plans in the statutory scheme of assessments.

Now upon this subject, or, as being related to it, I call attention to the decision in the case of *Murdock* v. *Cincinnati*, 44 Fed. Rep., 726, by Judge Jackson of the Circuit Court of the United States for the Southern District of Ohio. The decision was made January 7, 1891. I read from the syllabus:

"A property owner who petitions for a street improvement, expressly requests that an assessment be made to pay it, and agrees to answer for a deficiency in the collectibility of the assessments against other property owners, thereby waives to insist upon notice or an opportunity to be heard before the assessments are levied.

"The proceedings of city authorities in levying an assessment for a street improvement, in the exercise of the power conferred on them by statute, and in compliance with a petition therefor, can not afterwards be impeached by an abutting owner, as being without due process of law, for the lack of notice or opportunity to be heard."

There is more to the same effect in the opinion, but what I have read from the syllabus indicates what will be found in the opinion. The whole opinion upon the subject is worthy of perusal by parties interested; and we think the principle there laid down and discussed is applicable to what I have been discussing, with reference to these preliminary prerequisites in the council. And it is applicable also to the next proposition

urged by counsel, that no notice was given to them of the proceedings or of the purpose to assess, etc., and I shall not discuss that further. The ordinary statutory notice was given or the one provided by law; that is to say, the published notice in the newspaper that an assessment had been made and was on file, giving the parties an opportunity to come in and object. And it appears that nobody came in, no objection was made; thereupon the assessment was confirmed. The statute provides that upon objection proceedings shall be taken to correct the assessment or make it just and right.

It is also urged on behalf of these plaintiffs that the council has not given them what they asked for; that instead of giving them a street, instead of straightening Twelfth street, widening Union street, they have acquired the property and turned it over to somebody else as a dooryard or private park, or something of that sort. It does appear that immediately contiguous to this piece that was acquired by the appropriation proceedings Mr. Macomber has built a flat building and that he has filled up his low ground in front and sodded it and put in some trees. This appears to have been done upon the permission of the board of public improvements, and seems to have been a sort of improvement for the neighborhood, because it made the place more sightly. But that it belongs to the city there can be no question and it is a part of this street, and it will be observed that the petitioners here have not asked for anything more than that it shall be acquired as part of the street. They have not asked that it be improved by paving or otherwise, and it is not to be supposed that upon the proper application the city would not take possession of it by paving it; in removing the old structure that stood there and making the place sightly, it seems that the real object desired by the petitioners has been substantially accomplished. But we hold that it is a part of the street—what the petitioners have asked for has been done.

Certain of these plaintiffs have acquired the lots assessed since these proceedings were instituted—I mean after the petition was filed in the council. Now an assessment becomes a lien upon property under Section 2255 of the Revised Statutes from the time it is made, which we understand to be from the

time an ordinance was passed levying it; and those who have purchased lots upon the street without notice prior to the passage of the ordinance are not bound by the assessments upon their lots. It is said by the city solicitor that all ought to be bound who purchased since the passage of the ordinance providing for the appropriation. But we think not; there is no reference in that to any assessment, nothing said about making any assessment in that, because the first time the council takes action looking to an assessment to bind the property is when it passes the assessing ordinance. Of course preliminary to that it had sent out the assessors.

Now this whole cost, as I have said, has been assessed upon the property of the petitioners. They are less than a majority of the owners of property within the limits described in the petition. They own less than a majority of the foot front of property. Other property situated just as their property is situated, benefited in the same way, to the same degree, has escaped the assessment altogether. Of that perhaps they would have no right to complain, were it not for the fact that the assessments which would naturally have gone upon that property, if all the property had been assessed, has gone upon their property; and it has increased their burden. It is urged by the city solicitor that those who signed the petition agreed that they would bear the whole burden. It would follow that the council might have taken action upon one person signing the petition and assessed the whole cost against him upon his property, or that they might have proceeded with a petition signed by two or three. Undoubtedly the parties might agree to such a thing and be bound by their agreement. But we think that it should appear very clearly they had agreed to that before the court would undertake to enforce a thing which would seem to be so unreasonable and inequitable. We do not put that construction upon this petition. When the petitioners have asked that the cost and expense be assessed upon the property abutting upon said streets as set forth above, we think that they meant, and that it is very clear that they meant, the property bounding or abutting on Twelfth street, between Adams and Jackson, and on Union street, between Jackson and Woodruff, and that they agreed to pay only their fair proportion of the costs, taking

into account all this property between Adams street and Wood-ruff avenue. For the reason that this assessment has not been made according to that plan, we feel compelled to set it aside, and we do set it aside. But we believe a valid assessment may be made in pursuance of that petition if the council will take into account all of the property between those streets in such manner as to only assess upon these properties, the properties of these plaintiffs, their fair and equitable proportion; and therefore we set this assessment aside, without prejudice to the rights of the council to proceed in pursuance of law and make a reassessment.

The costs in this case will be adjudged against the city.

*Alvord & Price, A. T. Goorley, Templeton & Templeton,* for plaintiffs.

*U. G. Denman,* City Solicitor, and *C. K. Friedman,* Assistant City Solicitor, for defendants.